UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF ILLINOIS

EASTERN DIVISION

| | |
|---|---|
| In re: <br><br> GREGORY J. SILVERMAN, <br> Debtor. | Chapter 7 <br><br> Case No. 19-02743 |
| BMO HARRIS BANK N.A., <br> Plaintiff, <br> v. <br> GREGORY J. SILVERMAN, <br> Defendant. | Honorable Carol A. Doyle <br><br> Adv. Pro. No.: 19-00650 |

**ANSWER TO COMPLAINT TO DETERMINE NON-DISCHARGEABILITY OF DEBT**

NOW COMES Defendant Gregory Silverman, by and through his attorneys Gleason and Gleason and for his Answer to Plaintiff's Complaint to Determine Non-Dischargeability of Debts pursuant to hereby answers as follows:

:

**Parties and Jurisdiction**

1. This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. § 1334. Venue is proper here pursuant to 28 U.S.C. § 1409. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I).

**Admit.**

2. The statutory basis for this complaint is 11 U.S.C. § 523.

**Admit.**

3. BMO is a federal depository institution and has offices throughout Illinois.

**Admit.**

4. The debtor is a resident individual of Illinois.

**Admit.**

5. Since November 9, 1995, the Debtor has been, and currently is, a licensed Attorney in the state of Illinois.

**Admit**

6. In 2004, the Debtor established the Law Offices of Gregory J. Silverman, P.C., which was incorporated in Illinois on or about May 14, 2004.

**Admit**

7. On information and belief, part of the Debtor's practice as a licensed attorney was collection of debts for his clients.

**Admit**

8. On information and belief, between May 14, 2004 and October 14, 2011, the Debtor continued to operate his business under the name of the Law Offices of Gregory J. Silverman, P.C.

**Admit**

9. On or about October 14, 2011, the Law Offices of Gregory J. Silverman, P.C. was involuntarily dissolved by the state of Illinois.

**Admit.**

10. Despite the Law Offices of Gregory J. Silverman, P.C. being involuntarily dissolved on October 14, 2011, the Debtor continued to operate and practice law under the corporate name.
**Admit.**

11.     Prior to May 18, 2018, the Debtor established two accounts with the Bank: a business checking account and a Client Trust Account ("IOLTA").

**Admit**

12.     On May 18, 2018, the Debtor received and deposited a check in the amount of $399,950.00 drawn on the account of Bird Heavy Civil, Ltd (Check No. 59642) and purporting to be issued by TD Bank into the Debtor's IOLTA account.

**Admit**

13.     On May 22, 2018, the Debtor requested an outgoing wire in the amount of

$339,957.50 be sent by BMO to Zhichun Trade CO. Limited located in Hong Kong, China. At that same time, the Debtor requested that $59,942.50 be transferred from the IOLTA account into his business checking account.   **Admit.**

14.     Through his request for the outgoing wire to Zhichun Trade CO. Limited and the transfer of funds into Debtor's operating account, the Debtor represented to the Bank that Check No. 59642 was a valid check with sufficient funds being held by Bird Heavy Civil, Ltd and that the check was issued for work performed by the Debtor.

**Denies as follows: Defendant filled out a wire transfer agreement provided by Plaintiff. The agreement contained no representations other than what the document contains.**

15.     On May 25, 2018, the Debtor deposited a check in the amount of $350,090.00 also drawn on the account of Bird Heavy Civil, Ltd (Check No. 59688) and purporting to be issued by TD Bank into Silverman's IOLTA account ending in -7202.

**Admit.**

16.     On May 29, 2018, the Bank was notified that Check No. 59642 from TD Bank was returned as "altered/fictitious," and the Bank was notified that both checks had been flagged as "forged/counterfeit warranty breach."

**Defendant is without sufficient knowledge or information to form a belief as to the truth of the date the bank was notified.  Defendant admits the remainder.**

17. On May 30, 2018, in response to an inquiry from the Bank, the Debtor represented to the Bank that Zhichun Trade CO. Limited was a legitimate client and that Zhichun Trade CO. Limited would be sending a wire to the Bank to cover the returned check, Check No. 59642.

**Defendant admits representing to the Bank his belief that Zhichun Trade CO. Limited was a legitimate client. Defendant denies the remainder as follows:  Defendant told the bank he would ask his client to cover the returned check.**

18. On June 7, 2018, Check No. 59688 was returned as "altered/fictitious".

**Defendant is without sufficient knowledge or information to form a belief as to the truth of the date the bank was notified.  Defendant admits the remainder.**

19. The Bank relied on the Debtor's representations in taking the action at the

Debtor's request to send an outgoing wire to Zhichun Trade CO. Limited in the amount of $339,957.50.

**Defendant denies any making any representations.  Defendant lacks insufficient knowledge as to who the agent of the Bank being referred to is and therefore lacks insufficient knowledge or information to form a belief as to the truth and therefore denies.**

20. The Debtor's representations were false and the Debtor made the representations with the intent to defraud the Bank so that the Bank would send the outgoing wire and transfer the remaining funds into the Debtor's operating account.

**Defendant denies.**

21. Although the Bank sent a wire recall on May 29, 2018, the Bank was notified by the Hong Kong bank that all funds had been transferred from the Hong Kong account and no additional funds remained.

**Debtor lacks insufficient knowledge as to who "Hong Kong" is as well as the date a wire recall was allegedly sent and therefore denies.**

22. These transactions resulted in the Debtor's IOLTA account being overdrawn and resulted in the Bank suffering a loss in the amount $346,327.71.

**Admit.**

23.     The Bank sent a Demand Letter dated June 13, 2018 to the Debtor for payment of the Bank's loses in the amount of $346,327.71.  (A copy of the June 13, 2018 Demand Letter is attached as **Exhibit 1**).

**Admit.**

24.     On November 28, 2018, the Bank, through counsel, sent a Notice of Dispute to the Debtor setting forth the Bank's claims and demanding reimbursement from the Debtor in the amount of $346,327.71.  (A copy of the Notice of Dispute correspondence dated November 28, 2018 is attached as **Exhibit 2**).

**Admit.**

25.     Prior to the Debtor filing his petition in Bankruptcy, the Debtor failed and/or refused to make any payments to the Bank related to these losses.

**Admit.**

**Count I**

**Objection to dischargeability pursuant to 11 U.S.C. § 523(a)(2)(A)**

26.     The Bank incorporates by reference as though fully set forth herein, its allegations in paragraphs 1-26 above.

27.     As set forth above, on or about May 18, May 22, May 25 and May 30, 2018, the Debtor made representations to the Bank including that Check No. 59642 was a valid check with sufficient funds being held by Bird Heavy Civil, Ltd and that the check was issued for work performed by the Debtor, that Zhichun Trade CO. Limited was a legitimate client, and that Zhichun Trade CO. Limited would be sending a wire to the Bank to cover the returned check, Check No. 59642 **Debtor lacks insufficient knowledge as to what representations are alleged to have occurred and on what date and therefore denies.**

28.     The Debtor's representations were false.

**Defendant denies.**

29. The Debtor knew his representations were false and/or knowingly or recklessly made the false representations which the Debtor knew or should have known would induce the Bank to act.

**Defendant denies.**

30. The Debtor made the representations to the Bank with the intent to deceive the Bank into paying and/or transferring the requested funds.

**Defendant denies**.

31. The Bank relied upon the Debtor's false representations, resulting in the Bank suffering a loss in the amount of $346,327.71.

**Defendant admits the bank suffered a loss.  Defendant denies the remainder.**

32. The Bank's reliance on the Debtor's representations was reasonable and justifiable.

**Defendant denies as follows:  Defendant made no representation other than filling out a wire transfer agreement.  Relying on the mere filling out of a wire transfer agreement is an unsafe and unsound banking practice which is forbidden under the federal financial institutions examination council which is a formal interagency body empowered to prescribe uniform principles, stands and report forms for the federal examination of financial institutions by the Board of Governors of the Federal Reserve System, The FDIC, the National Credit Union Administration, the Office of the Comptroller of the Currency and the CFPB.  Bank Examination objects include "<u>Review the institution's policies and procedures regarding overdrafts to ensure it prohibits transfers of funds against accounts that do not have collected balances or preauthorized credit availability</u>."**

(Exhibit 1: FFIEC Wholesale Payment Systems IT Examination Handbook at Pg. 19)

33. The Debtor's actions and representations constitute "actual fraud". See *Husky International Electronics, Inc. v. Ritz*, 136 S. Ct. 1581 (2016).

**Defendant Denies.**

34.     Based upon the Debtor's actions, false representations and actual fraud, the Bank wired money to Zhichun Trade CO. Limited and transferred money to the Debtor, resulting in a violation of 11 U.S.C.¶ 523(A)(2).

**Defendant admits Plaintiff transferred money and denies the remainder.**

35.     The debt owed from the Debtor to BMO is non-dischargeable pursuant to Bankruptcy Code Section 523(a)(2)(A).

**Defendant denies as follows:  The Bankruptcy Code Section is inapplicable because Defendant obtained the money before the alleged representations occurred. (2)for money, property, services, or an extension, renewal, or refinancing of credit, <u>to the extent obtained by</u>—(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;**

**Affirmative Defenses**

1. **Contributory Negligence: Violation of Safe and Sound Banking Practices through performing a wire transfer against uncollected funds.**

2. **Assumption of the Risk – Plaintiff knew or should have known of the dangerousness of transmitting a wire against uncollected funds and voluntarily proceeded.**

3. **The Bank had an opportunity to influence the transaction by informing Defendant that the funds were uncollected.**

       **WHEREFORE**, Gregory Silverman. prays that this Court enter judgment:

a)     finding that the debt owed to BMO is discharged.

b)     awarding such other relief as the Court deems just and proper.

       **Gregory Silverman.**

       By: /s/ Troy Gleason
       One of his Attorneys

Troy Gleason
Julie Gleason
David Gallagher
Gleason & Gleason
77 W Washington #1218
Chicago, IL 60602
Telephone: (312) 445-8825
Email: troy@chicagobk.com